Bynum v Camp Bisco, LLC (2021 NY Slip Op 05763)





Bynum v Camp Bisco, LLC


2021 NY Slip Op 05763


Decided on October 21, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 21, 2021

532130
[*1]Deborah Bynum, Individually and as Administrator of the Estate of Heather Bynum, Deceased, Respondent,
v
Camp Bisco, LLC, et al., Appellants.

Calendar Date:September 9, 2021

Before:Lynch, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Roemer Wallens Gold & Mineaux, LLP, Albany (Matthew J. Kelly of counsel), for appellants.
LaFave, Wein & Frament, PLLC, Albany (Jason A. Frament of counsel), for respondent.



Aarons, J.
Appeal from an order of the Supreme Court (Versaci, J.), entered September 3, 2020 in Schenectady County, which, among other things, denied defendants' motion for summary judgment dismissing the amended complaint.
The facts of this case are set forth in prior appeals (155 AD3d 1503 [2017]; 151 AD3d 1427 [2017]; Bynum v Keber, 135 AD3d 1066 [2016]; 135 AD3d 1060 [2016]). Briefly, plaintiff's daughter (hereinafter decedent) sustained personal injuries and subsequently died after reportedly ingesting a harmful substance while attending a music festival with her fiancÉ. Plaintiff, individually and in her capacity as administrator of decedent's estate, commenced this action alleging various causes of action as a consequence of decedent's death. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the amended complaint. Supreme Court, among other things, denied the motion. Defendants appeal. We affirm.
Plaintiff premises her claim on two theories — defendants violated their common-law duty to minimize foreseeable dangers and defendants failed to comply with regulatory requirements for mass gatherings. Turning first to the latter, the State Sanitary Code requires that an operator of a mass gathering provide a certain level of emergency health care services and facilities (see 10 NYCRR 7-4.3 [n]). One requirement is that "the services of a physician [be] available to the site within 15 minutes" (10 NYCRR 18.4 [a] [1], [2]). Defendants maintain that they satisfied this requirement, but the ambulance transport records, hospital records and deposition testimony as part of defendants' proffer reflected conflicting information as to whether it took more or less than 15 minutes to transport decedent from the music festival site to a local hospital. An emergency medicine physician who reviewed the emergency medical services plan for the festival testified at his deposition that he was not aware of a physician being at the site or within 15 minutes of the festival site. Furthermore, the Internet-based map provided by defendants likewise indicated that the travel time from the festival site to the local hospital was 25 minutes. Because defendants' own submissions reveal a triable issue of fact as to whether a physician was available within 15 minutes of the festival site, defendants did not meet their summary judgment burden regarding their compliance with the applicable regulatory provision.
Defendants assert that they had no duty to have a physician present at the festival site. Defendants submitted, among other things, affidavits from medical professionals opining that a physician was not necessary to be at the festival site, that sufficient medical staff, which included increased advanced life support services, were readily available, that the medical transportation plan met all applicable requirements and that the emergency medical treatment provided to decedent was proper. Although the emergency medical [*2]physician ultimately approved the medical transportation plan, he did express a concern that a physician needed to be at the festival site given past drug use by attendees and reported drug overdoses. Plaintiff also tendered affidavits from experts who contradicted the medical opinions submitted by defendants. Viewing the evidence in the light most favorable to plaintiff, a question of fact exists on this point.
Defendants also note that advanced life support services were available at a nearby fire station and that this fire station was along the route from the festival site to the hospital. To that end, in lieu of having a physician on call or on site, certain levels of advanced life support services may be used so long as such substitution is approved by the permit-issuing official (see 10 NYCRR 18.4 [e]). The record reflects that, in the application for the mass gathering permit, it was requested that advanced life support services would be at an off-site location and that a permit was issued upon this application. To the extent that there was compliance with 10 NYCRR 18.4 (e), however, such "compliance . . . is not dispositive of [the] allegations based on common-law negligence principles" (Washington v Albany Hous. Auth., 297 AD2d 426, 427 [2002]; see Kellman v 45 Tiemann Assoc., 87 NY2d 871, 872 [1995]). Accordingly, defendants' reliance on any compliance with this specific regulation to absolve itself from liability as a matter of law is unavailing.
Regarding the issue of whether due care was exercised to curtail drug use at the festival, mass gathering permittees have "a common-law duty to minimize foreseeable dangers on their property" (Bynum v Keber, 135 AD3d at 1067 [internal quotation marks and citations omitted]; see Maheshwari v City of New York, 2 NY3d 288, 294 [2004]). The record discloses that a live event security company was hired to provide security at the festival, that police officers were allowed on site, that attendees, including their bags and vehicles, were searched prior to entry into the festival site and that any attendee seen selling or consuming illegal drugs would be escorted off the premises. Decedent's fiancÉ, however, testified at his deposition that, once in the festival, he noticed many individuals using or trying to sell illegal drugs and that security personnel did not take any action with respect to these individuals. The fiancÉ also testified that he did not see any police officers at the festival site. Taking into account the known history of drug use at the festival, a question of fact exists regarding whether adequate security to curtail drug use at the festival was provided.
Defendants additionally contend that, even if they were negligent, decedent's own act of ingesting a harmful substance was the sole proximate cause of her injuries and death. "[P]roximate cause may be determined as a matter of law where the evidence conclusively establishes that there was an intervening act which was [*3]so extraordinary or far removed from the defendant's conduct as to be unforeseeable" (Decker v Forenta LP, 290 AD2d 925, 926 [2002] [internal quotation marks and citation omitted]; see Amatulli v Delhi Constr. Corp., 77 NY2d 525, 534 [1991]). That said, the question of whether a defendant's negligence proximately caused the alleged personal injuries is generally reserved for resolution by the trier of fact (see Palmatier v Mr. Heater Corp., 163 AD3d 1192, 1197 [2018]; Southern Tier Crane Servs., Inc. v Dakksco Pipeline Corp., 149 AD3d 1303, 1305 [2017]). In view of the fact that it was reasonably foreseeable that drug use would occur during the festival and the competing expert proof on the issue of proximate cause, defendants' claim is without merit (see Soto v New York City Tr. Auth., 6 NY3d 487, 491 [2006]; Pasternak v County of Chenango, 156 AD3d 1007, 1008-1009 [2017]; Miller v Genoa AG Ctr., Inc., 124 AD3d 1113, 1116 [2015]).
Finally, for a wrongful death claim, recovery is limited to the "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought" (EPTL 5-4.3 [a]; see Parilis v Feinstein, 49 NY2d 984, 985 [1980]). "Because it is difficult to establish pecuniary loss, damages in a wrongful death case should typically be for a jury to calculate" (McKenna v Reale, 137 AD3d 1533, 1536 [2016] [citation omitted]). The record discloses that decedent lived with her fiancÉ in a flat in plaintiff's multifamily home and provided plaintiff with financial support in the form of nominal rent. Decedent also gave plaintiff presents and would occasionally mow the lawn. Based on the foregoing proof, defendants were not entitled to summary dismissal of the wrongful death claim (see Gonzalez v New York City Hous. Auth., 77 NY2d 663, 670 [1991]; McKenna v Reale, 137 AD3d at 1536).
Lynch, J.P., Pritzker, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with costs.